**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**KEVIN MULLAHEY,**

                              **Plaintiff,**

  vs.                                                       **1:16-CV-00401
                                                                           (MAD/DJS)**

**MICHAEL ZURLO, individually and as Sheriff of
Saratoga County, SPENCER HELLWIG, III as
County Administrator for the County of Saratoga,
THE COUNTY OF SARATOGA, and JOHN DOES,**

                              **Defendants.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

**LUIBRAND LAW FIRM, PLLC**        **KEVIN A. LUIBRAND, ESQ.**
950 New Loudon Road
Latham, New York 12110
Attorneys for Plaintiff

**LEMIRE, JOHNSON LAW FIRM**      **GREG T. JOHNSON, ESQ.**
P.O. Box 2485                                  **APRIL J. LAWS, ESQ.**
2534 Route 9
Malta, New York 12020
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On April 7, 2016, Kevin Mullahey ("Plaintiff") commenced the present civil rights action pursuant to 42 U.S.C. §§ 1983 and 1985 against Michael Zurlo, Spencer Hellwig, III, the County of Saratoga, and John Does ("Defendants"). Plaintiff allege violations of his Due Process Rights, "Stigma-Plus" defamation, Conspiracy, and Municipal Liability. *See* Dkt. No. 1.

Currently before the Court is Defendants' Motion to Dismiss pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. No. 27-5.

## II. BACKGROUND[1]

Plaintiff was employed by Defendants for approximately thirty-six (36) years. *See* Dkt. No. 1 at ¶ 18. On January 1, 2014, Plaintiff was promoted from the position of Investigator to Undersheriff. *See id.* at ¶ 19. Under Saratoga County and New York State Civil Service Law, the position of Undersheriff is an exempt and/or management position. *See id.* at ¶ 20. As Undersheriff, Plaintiff was an at-will employee who could be discharged with or without reason. *See id.* at ¶ 21.

Plaintiff held the position of Undersheriff from January 1, 2014 through February 12, 2016. *See id* at ¶¶ 19, 36; Dkt. No. 27-5 at 7.[2] In January 2016, Defendant Zurlo implied to Plaintiff that Plaintiff had allegedly compromised an investigation. *See* Dkt. No. 1 at ¶ 24. Plaintiff responded that he did not act improperly in the course of his work and to prove this, Plaintiff requested to be interviewed by Defendants and offered to take a polygraph test. *See id.* at ¶¶ 25-26. Defendants, however, refused to interview Plaintiff and did not have him submit to a polygraph test. *See id.* at ¶ 27.

On February 9, 2016, Plaintiff met with Defendants' agents who presented a document titled "Settlement Agreement." *See id.* at ¶¶ 30-31. The "Settlement Agreement" was presigned by Defendants Hellwig and Zurlo and which, if signed by Plaintiff, would have, by its terms, stated that Plaintiff was resigning his employment and surrendering any rights to file claims

---

[1] Unless otherwise noted, the facts contained in the "Background" section of this Memorandum-Decision and Order are undisputed.

[2] To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

2

against Defendants. *See id.* at ¶ 31. Ultimately, Plaintiff did not sign the "Settlement Agreement." *See id.*

During that same February 9, 2016 meeting, Defendants' representatives allegedly told Plaintiff that if he did not resign by February 12, 2016, he would be fired without a pre-termination hearing and would not be permitted to challenge the termination. *See id.* at ¶ 32. If terminated, Plaintiff and his family would have lost their county-paid health insurance. *See id.* at ¶ 33. On February 12, 2016, Plaintiff resigned in what he asserts was a coerced resignation or constructive discharge. *See id.* at ¶¶ 34-35. That same day, Defendants accepted Plaintiff's resignation. *See id.* at ¶ 36.

On or after February 12, 2016, Plaintiff alleges that Defendants (and/or "JOHN DOES the Defendants knew") told the media in the County of Saratoga and the greater Capital Region that Plaintiff's resignation was due to his improper and/or illegal conduct as Undersheriff. *See id.* at ¶¶ 38-39. In particular, the following statements were made:

(a) To the Albany Times Union newspaper on February 13, 2016:

(i) "The departure of Kevin P. Mullahey, who Sheriff Michael Zurlo elevated to undersheriff in 2014, came as questions surfaced about whether a person close to Mullahey may have intervened in a State_Police undercover criminal investigation,"

(b) To the Albany Times Union newspaper on February 15, 2016:

(i) "The Saratoga County undersheriff was forced to retire from his job last week after the department accused him of interfering in a drug investigation in which the State Police said the identity of an undercover informant was compromised."

(c) To television station WNYT between February 12-14, 2016:

(i) "Undersheriff Mullahey interfered in a drug investigation to protect his son"

3

(d) To the Saratogian newspaper on February 16, 2016:

   (i) "Published reports say he was accused of allegedly interfering with [*sic*] in a state police undercover investigation."

(e) To the Post Star newspaper on February 14, 2016:

   (i) "From what we have heard from inside and outside the Sheriff's Office, allegations were raised about the leak of confidential information related to a drug case."

(f) To the Post Star newspaper on March 8, 2016:

   (i) "Mullahey retired suddenly last month amid questions about whether he leaked information about a criminal investigation."

(g) To the Daily Gazette newspaper on February 19, 2016:

   (i) "Mullahey might have revealed the name of a confidential informant to someone close to him, which could have compromised a State Police investigation."

   (ii) "Mullahey was not forthcoming when the allegations first surfaced."

*Id.* at ¶ 44.

## III. DISCUSSION

**A.  Standard of Review**

In deciding a Rule 12(c) motion, the court "employ[s] the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)." *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the party's claim, accepting as true all well-pleaded facts and drawing all reasonable inferences in favor of the pleader. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). Ultimately, "when the allegations

in a complaint, however true, could not raise a claim of entitlement to relief," the complaint must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

On a Rule 12(c) motion, the court may consider the following matters outside the four corners of the complaint without converting the motion to one for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, and (4) any matter of which the court can take judicial notice for the factual background of the case. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 421-22 (2d Cir. 2011) (quotation omitted); *see also Jenkins v. County of Washington*, 126 F. Supp. 3d 255, 274 (N.D.N.Y. 2015) (citation omitted).

**B.     Deprivation of interests without due process**

In his first claim, Plaintiff alleges that he was deprived of constitutionally protected liberty interests without due process, *i.e.*, his reputation and future ability to engage in law enforcement were injured when denigrating statements were made to the media following his forced resignation. *See* Dkt. No. 1 at ¶¶ 51-58. Defendants contend that this claim must be dismissed for the following reasons: (1) Plaintiff admittedly resigned his employment and, therefore, was not terminated by any Defendant; (2) Plaintiff never requested a post-resignation name clearing hearing; (3) Plaintiff failed to avail himself of "due process" that was available under New York law; and (4) Plaintiff's admissions make clear that he was never deprived of a liberty interest. *See* Dkt. No. 27-5 at 11-17.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property without due process of law, and 'those who seek to invoke its procedural protection must establish that one of these interests is at stake.'" *Victory v. Pataki*, 814

F.3d 47, 59 (2d Cir. 2016) (quoting *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012)) (other citation omitted). "'[S]tandard analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient.'" *Id.* (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011)).

### *1. Property interest*[3]

Defendants assert that this claim should be dismissed because Plaintiff voluntarily retired from public law enforcement and as a result was not deprived of any interest. Dkt. No. 27-5 at 15. Plaintiff argues that his retirement was not voluntary; instead it should be considered a "constructive discharge or coerced retirement." Dkt. No. 39 at 19.

"Protected property interests 'are not created by the Constitution.'" *Hughes v. City of N.Y.*, ___ F. Supp. 3d ___, 2016 WL 3541545, *5 (E.D.N.Y. 2016) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). "Instead, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Id.* (quotation and other citation omitted); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002)). "It is well-established that a public employee has a property interest in his job if he is entitled to continued employment absent 'just cause' for termination." *Id.* (citing *Ciambriello*, 292 F.3d at 313; *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002)). "In the same way, an 'employee of a government contractor' may

---

[3] In his complaint, Plaintiff does not allege that he had a property interest in his at-will employment as Undersheriff. Rather, the complaint clearly indicates that he was denied "a liberty interest without due process." Dkt. No. 1 at ¶ 52. Defendants, however, briefly discuss why Plaintiff cannot plausibly allege that he had a protectable property interest in his continued employment. *See* Dkt. No. 27-5 at 15. As such, the Court will briefly address any such property interest claim.

6

'have a constitutionally protected property interest in continued employment.'" *Id.* (quoting *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 407 (2d Cir. 2015)).

The Court finds that even if a constructive discharge or coerced retirement were assumed, Plaintiff failed to establish that he was deprived of a property interest. Plaintiff concedes that as Undersheriff, he was an at-will employee. Dkt. No. 1 at ¶ 20. "An at-will government employee may be terminated for cause or for no cause whatsoever." *Segal v. City of N.Y.*, 459 F.3d 207, 213 (2d Cir. 2006); *see Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). It is well settled that "[a]n at-will employee holds no protectable property interest in his employment where, under state law, employment is held at the whim of his employer." *Hennigan v. Driscoll*, No. 5:06-cv-426, 2009 WL 3199220, *13 (N.D.N.Y. Sept. 30, 2009) (citing *Bishop v. Wood*, 426 U.S. 341, 345-57 (1976); *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002)) (other citation and quotation omitted). As a result, an at-will employee has no right of reinstatement and procedural due process only requires the limited right to be heard "'at a meaningful time and in a meaningful manner.'" *Segal*, 459 F.3d at 207 (quoting *Goldberg v. Kelly* 397 U.S. 254, 267 (1970)).

Based on the foregoing, the Court finds that Plaintiff had no protectable property interest in his continued employment. Further, given the nature of his resignation, the availability of an Article 78 proceeding provided Plaintiff with a "meaningful opportunity to challenge the voluntariness of his resignation" sufficient to ensure due process. *See Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984) ("Where, as here, Article 78 gave the employee a meaningful opportunity to challenge the voluntariness of his resignation, he was not deprived of due process

simply because he failed to avail himself of the opportunity"); *see also Stenson v. Kerlikowske*, 205 F.3d 1324 (2d Cir. 2000) (unpublished opinion).[4]

### *2. Liberty interest*

Plaintiff alleges that he was deprived of a liberty interest (his reputation and/or his future ability to engage in law enforcement) without due process due to Defendants' alleged stigmatizing statements. *See* Dkt. No. 1 at ¶¶ 52-55. Defendants assert that this due process claim should be dismissed because Plaintiff failed to avail himself of due process that was available under New York law, *i.e.*, a name clearing hearing pursuant to Article 78. *See* Dkt. No. 27-5 at 13. While conceding "it has been held that an Article 78 proceeding does generally provide post-deprivation process," Plaintiff argues that an "Article 78 proceeding does not adequately protect Plaintiff's interests under the particular circumstances here where the defendants *deny* making any stigmatized statements to the press." Dkt. No. 39 at 15. In support of this argument, Plaintiff asserts that "the limited discovery available to plaintiff in an Article 78 proceeding where defendants deny making any statements precluded plaintiff's opportunity to vindicate his due process stigma-plus rights in an Article 78 proceeding." *Id.* at 16.

The Supreme Court has made clear that there is no constitutionally protected property or liberty interest in one's reputation. *See Siegert v. Gilley*, 500 U.S. 226, 233 (1991); *Paul v. Davis*, 424 U.S. 693, 701 (1976). However, when an individual is defamed or stigmatized in the course of his dismissal from public employment, he does have a cognizable liberty interest. *See Codd v. Velger*, 429 U.S. 624, 628 (1977); *Paul*, 424 U.S. at 709. This claim, which is known as a "stigma-plus" claim, *Patterson v. Utica*, 370 F.3d 322, 330 (2d Cir. 2004), is accorded only

---

[4] The *Giglio* court reached this result even though the plaintiff failed to challenge his alleged forced resignation in an Article 78 proceeding and the statute of limitations had already expired. *See Giglio*, 732 F.2d at 1135 n.1.

8

procedural due process protection — specifically, the right to an opportunity to refute the charges and clear one's name. See *Codd*, 429 U.S. at 627; *see also Paul*, 424 U.S. at 710; *Roth*, 408 U.S. at 573.

In an action alleging termination (or here a coerced retirement) from government employment, a plaintiff must satisfy three elements in order to establish the stigma component of the stigma-plus claim. First, he must show that the "government made stigmatizing statements" about him that call into question his "good name, reputation, honor, or integrity." *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006) (citation omitted).[5] Statements that "'denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession' will satisfy the stigma requirement." *Id.* (quoting *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630-31 (2d Cir. 1996)). Second, the stigmatizing statements must have been made public. *See id.* (citation omitted). And third, the plaintiff must demonstrate that the stigmatizing statements were made in "close temporal relationship" to the plaintiff's deprivation of liberty. *See id.* at 212–13 (citing *Velez v. Levy*, 401 F.3d 75, 89 (2d Cir. 2005)).

Even after establishing the stigma, plaintiffs still need to establish the plus, *i.e.*, that his liberty was deprived without due process of law. In a case involving an at-will government employee, all that due process requires, for purposes of defeating a stigma-plus claim, is "the availability of an adequate, reasonably prompt, post-termination name-clearing hearing[.]" *Segal*, 459 F.3d at 214 (holding that, "in the context of an at-will government employee, a reasonably

---

[5] Generally, a plaintiff need only allege the falsity of the stigmatizing statements, not prove that they are false. *See Patterson*, 370 F.3d at 330.

9

prompt, post-termination name-clearing hearing satisfies constitutional due process as long as the procedures afforded at such a hearing are sufficient to protect the employee's reputational and professional interests"); *see also Patterson*, 370 F.3d at 335. "An Article 78 proceeding provides the requisite post-deprivation process – even if [the plaintiff] failed to pursue it." *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 121 (2d Cir. 2011) (citations omitted).

In the present matter, Plaintiff contends that an "Article 78 name-clearing hearing does not serve as an adequate remedy for Plaintiff's Due Process which would thereby defeat the stigma-plus claim." Dkt. No. 39 at 14. Plaintiff claims that such a proceeding would not adequately protect his interests under the particular circumstances of this case because Defendants "*deny* making any stigmatized statements to the press." *Id.* at 15 (emphasis in original). According to Plaintiff, at such a name clearing hearing, he would be required to establish that his employer publicly disseminated the defamatory information. *See id.* Plaintiff claims that "the limited discovery available to [him] in an Article 78 proceeding where defendants deny making any statements precluded plaintiff's opportunity to vindicate his due process stigma-plus rights in an Article 78 proceeding." *Id.* at 16. Plaintiff argues that he "could not obtain 'meaningful' remedy under Article 78 when the disclosure of the denigrating statements given to the media was by an anonymous source without discovery and facing Defendants' denial as the source." *Id.* The Court disagrees.

First, the purpose of a name-clearing hearing is simply to afford Plaintiff a forum and a process to clear his name by rebutting the specific statements Plaintiff alleges in his complaint. Attacking the alleged source(s) of the specific statements, which Plaintiff argues are unknown to him, is irrelevant to his opportunity to clear his name. Thus, a right to formal discovery was not necessary for Plaintiff to pursue a name-clearing hearing pursuant to Article 78. Additionally,

10

although discovery in Article 78 proceedings is generally discouraged, it is permitted at the discretion of the court. *See Wilson v. Pfeiffer*, 565 F. Supp. 115, 117 (S.D.N.Y. 1983) (citation omitted); *Chapman v. 2 King St. Apartments Corp.*, 8 Misc. 3d 1026(A), 2005 WL 1961330, *11 (Sup. Ct., N.Y. Cty. 2005) (citations omitted). Moreover, the only individuals who could possibly clear Plaintiff's name at a name-clearing hearing would be the individuals responsible for his alleged forced resignation, *i.e.*, Defendants Zurlo and Hellwig.

In support of his argument that he "could not obtain a 'meaningful' remedy under Article 78," Plaintiff relies on *Hays v. Ward*, 144 Misc. 2d 227, 232 (Sup. Ct., N.Y. Cty. 1989). *See* Dkt. No. 39 at 17. In *Hays*, the court dismissed without prejudice the plaintiff's petition seeking a name-clearing hearing not because the plaintiff was unable to identify those who disseminated information about him, but because he failed to allege that the disseminated information was false or defamatory. *See Hays*, 144 Misc. 2d at 232. As such, the case provides no support for Plaintiff's position than an Article 78 name-clearing hearing would not have provided him with a meaningful remedy.

As Defendants correctly argue, courts in the Second Circuit have repeatedly found that Article 78 name-clearing hearings are all the process due to a former municipal employee in Plaintiff's position. For example, in *Hennigan v. Driscoll*, No. 5:06-cv-426, 2009 WL 3199220 (N.D.N.Y. Sept. 30, 2009), the plaintiff was hired by the Syracuse Police Department as a probationary police officer. *See id.* at *3. After a newspaper article was published regarding an incident involving the plaintiff during his previous employment, the plaintiff resigned his position. *See id.* Several days later, the plaintiff sought to rescind his resignation and requested a post-termination hearing. *See id.* The police chief denied both requests and further informed the plaintiff that "post-termination hearings did not apply to resignations." *Id.* at *3-4. In granting

11

the defendants' motion for summary judgment, the court held that the plaintiff's stigma plus claim fails because he had available to him an Article 78 proceeding. *See id.* at *11. Further, the court noted that the Syracuse Police Department was not required to notify the plaintiff of his option to pursue and Article 78 proceeding. *See id.*

In *Walsh v. Suffolk County Police Dept.*, No. 06-cv-2237, 2008 WL 1991118 (E.D.N.Y. May 5, 2008), during the plaintiff's terms as a probationary police officer, it was discovered that the plaintiff failed to disclose a prior criminal investigation by a different police department. *See id.* at *1. As a result, the defendants sought and obtained the plaintiff's resignation. *See id.* In granting the defendants' motion for summary judgment on the plaintiff's stigma plus claim, the court held that the plaintiff's failure to bring an Article 78 proceeding was fatal to his claim and that he failed to set forth any basis for concluding that this available state remedy was inadequate. *See id.* at *14; *see also Ryan v. Carroll*, 67 F. Supp. 2d 356, 361 (S.D.N.Y. 1999). Further, the court rejected any argument that the defendants were required to notify the plaintiff about the availability of the Article 78 proceeding. *See id.* at *14 n.13 (citing *Vialez v. N.Y. City Hous. Auth.*, 783 F. Supp. 109, 121 (S.D.N.Y. 1991)).

As the caselaw makes clear, Article 78 name-clearing hearings are generally found to provide all of the process that a person in Plaintiff's position is due. *See Guerra v. Jones*, 421 Fed. Appx. 15, 19 (2d Cir. 2011) (finding that an Article 78 hearing provides the requisite post-deprivation process thereby precluding the plaintiff's stigma-plus claim); *D'Allessandro v. City of Albany*, No. 04-cv-788, 2008 WL 544701, *13-14 (N.D.N.Y. Feb. 26, 2008) (holding that the availability of an Article 78 proceeding to the plaintiff, "which is an adequate post-deprivation procedure and 'frequently function as name clearing hearings', means that there has been no constitutional violation"); *Poole v. Bd. of Trustees of Cayuga Comm. Coll.*, No. 96-cv-681, 1998

WL 661540, *7 (N.D.N.Y. Sept. 25, 1998). The facts set forth in the complaint make clear that Plaintiff's situation is not one that would warrant finding that these established procedures were insufficient to provide meaningful redress.

Based on the foregoing, the Court grants Defendants' motion for judgment on the pleadings as to Plaintiff's due process cause of action.

**C.     Conspiracy claim**

Plaintiff's third cause of action alleges a conspiracy pursuant to 42 U.S.C. § 1983. Plaintiff contends that, "on and after February 12, 2016, Defendants, for the purpose of depriving Plaintiff, either directly or indirectly, of the due process privileges and immunities guaranteed Plaintiff under the Fourteenth Amendment to the US Constitution, engaged in, or caused to be done, the aforesaid acts in furtherance of their conspiracy." Dkt. No. 1 at ¶ 66. Further, Plaintiff asserts that "the actions of Defendants were intended to denigrate Plaintiff's reputation without due process." *Id.* at ¶ 67.

"In order to state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir.2007) (citation and internal quotation marks omitted). "A § 1985(3) conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.*; *see also United Bhd. of Carpenters & Joiners, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 834-39 (1983);

*see also Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) (citation omitted); *Brito v. Arthur*, 403 Fed. Appx. 620, 621 (2d Cir. 2010).

A plaintiff asserting a claim under section 1985(3) need not necessarily offer proof of an explicit agreement; a conspiracy can be evidenced circumstantially, through a showing that the parties had a "'tacit understanding to carry out the prohibited conduct.'" *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995) (quoting *United State v. Rubin*, 844 F.2d 979, 984 (2d Cir. 1988)) (other citations omitted). This notwithstanding, in order to properly plead such a claim, a plaintiff must make more than "conclusory, vague, or general allegations of conspiracy." *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (citation omitted).

In the present matter, aside from conclusory assertions, Plaintiff failed to provide any factual allegations that Defendants engaged in a conspiracy or that they were motivated by unlawful discriminatory intent or animus. *See Brito*, 403 Fed. Appx. at 621. Nowhere in the complaint does Plaintiff advance specific factual allegations concerning (1) any agreement between Defendants; (2) what each Defendant allegedly did in furtherance of the alleged conspiracy; (3) who specifically conspired or entered into an agreement; or (4) any overt act done in furtherance of the goal of the conspiracy that caused Plaintiff injury. As such, beyond the fact that Plaintiff failed to plausibly allege that his due process rights were violated, Plaintiff failed to plausibly allege any of the elements necessary to support the claimed conspiracy.

Based on the foregoing, the Court grants Defendants motion for judgment on the pleadings as to Plaintiff's conspiracy claim.

## D. Municipal liability

"Although municipalities are within the ambit of section 1983, municipal liability does not attach for actions undertaken by city employees under a theory of *respondeat superior*." *Birdsall*

14

*v. City of Hartford*, 249 F. Supp. 2d 163, 173 (D. Conn. 2003) (citing *Monell v. New York City Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978)). Despite the fact that *respondeat superior* liability does not lie, a municipal entity or employee sued in his or her official capacity can be held accountable for a constitutional violation that has occurred pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers . . . [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690-91. Municipal liability can be established in a case such as this in several different ways, including through proof of an officially adopted rule or widespread, informal custom demonstrating "a deliberate government policy or failing to train or supervise its officers." *Bruker v. City of New York*, 337 F. Supp. 2d 539, 556 (S.D.N.Y. 2004) (quoting *Anthony v. City of New York*, 339 F.3d 129, 140 (2d Cir. 2003)). A plaintiff may also show that the allegedly unconstitutional action was "taken or caused by an official whose actions represent an official policy," or when municipal officers have acquiesced in or condoned a known policy, custom, or practice. *See Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000), *cert. denied sub nom.*, *County of Schenectady v. Jeffes*, 531 U.S. 813, 121 S. Ct. 47 (2000); *see also Wenger v. Canastota Cent. Sch. Dist.*, No. 5:95-CV-1081, 2004 WL 726007, *3 (N.D.N.Y. Apr. 5, 2004).

In the present matter, since the Court has found that Plaintiff failed to plausibly allege any unconstitutional conduct against any individual Defendant, Plaintiff's municipal liability claims must also be dismissed. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point"); *see also Rutigliano v. City of New York*, 326 Fed. Appx. 5, 9 (2d

Cir. 2009) (affirming summary judgment dismissal of the plaintiff's *Monell* claim where the court dismissed all of the plaintiff's section 1983 claims); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (observing that there must be an underlying constitutional violation to support a *Monell* claim); *Khan v. Ryan*, 145 F. Supp. 2d 280, 285 (E.D.N.Y. 2001) (same).

Although "there are limited exceptions to this rule where the injuries complained of are not solely attributable to the actions of named individual defendants, or where a jury concludes that the individual defendants violated plaintiff's rights but nonetheless enjoy qualified immunity, neither of these exceptions applies here." *Bonilla v. Jaronczyk*, 354 Fed. Appx. 579, 582 (2d Cir. 2009) (internal quotation marks and citations omitted); *see also Rutigliano*, 326 Fed. Appx. at 9 (observing that a municipality may be found liable under section 1983 even in the absence of individual liability "only in very special circumstances" (citing *Barrett v. Orange County Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999)).

Moreover, while Plaintiff's complaint includes legal conclusions designed to trigger *Monell* liability, *see* Dkt. No. 1 at ¶¶ 60-64, his conclusory allegations are legally insufficient to support his claim. Plaintiff failed to put forth any factual allegations concerning a municipal policy, custom or practice that was the moving force behind his alleged injury. *See Arredondo v. County of Nassau*, No. 11-cv-710, 2012 WL 910077, *8 (E.D.N.Y. Mar. 16, 2012).

Based on the foregoing, the Court grants Defendants' motion for judgment on the pleadings as to Plaintiff's municipal liability claim.

## IV. CONCLUSION

After carefully reviewing the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

16

**ORDERS** that Defendants' motion for judgment on the pleadings (Dkt. No. 27) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 9, 2017
      Albany, New York

_/s/ Mae A. D'Agostino_
Mae A. D'Agostino
U.S. District Judge